# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PETER QUINN ELVIK,

    Petitioner,

vs.

DON BUNCE, *et al.*,

    Respondents.

Case No. 3:04-cv-00471-GMN-WGC

**ORDER**

This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, by a Nevada state prisoner represented by counsel, presently on appeal to the United States Court of Appeals for the Ninth Circuit. By order filed December 5, 2013, this Court conditionally granted habeas relief as to Ground 8 of the second amended habeas petition. (ECF No. 100). Before the Court is petitioner's motion for release pending resolution on appeal. (ECF No. 105).

**I. Procedural Background**

Following a jury trial in October 1996, petitioner Peter Quinn Elvik was convicted of first-degree murder with the use of a deadly weapon (Count I) and robbery with the use of a deadly weapon (Count II). On Count I, petitioner was sentenced to life imprisonment with the possibility of parole for first degree murder, and a consecutive sentence of life with the possibility of parole for use of a deadly weapon. On Count II, petitioner was sentenced to 48-150 months incarceration for robbery, with an equal and consecutive sentence for use of a deadly weapon. (Exhibit 78). Petitioner appealed his conviction to the Nevada Supreme Court and litigated a state habeas petition without success. (Exhibits 109 & 176). On August 31, 2004, petitioner filed a federal habeas petition in this Court. (ECF No. 2). Petitioner was appointed counsel and subsequently filed first and second amended petitions in December 2004 and January 2006. (ECF Nos. 8 & 42). On September 27, 2007, this Court dismissed the second amended petition as untimely. (ECF No. 60).

    Petitioner successfully appealed the dismissal of his second amended petition to the Ninth

Circuit Court of Appeals. (ECF No. 65). A second round of litigation concerning procedural defense followed. On January 4, 2011, this Court determined that Grounds 3 and 4 were unexhausted and directed respondents to answer the remaining claims. (ECF Nos. 84 & 90). Respondents filed an answer (ECF No. 91) and petitioner, through counsel, filed a reply (ECF No. 96). On December 5, 2013, this Court conditionally granted habeas relief to petitioner on Ground 8 of the second amended petition. (ECF No. 100). Respondents filed a notice of appeal on December 12, 2013. (ECF No. 102). On January 22, 2014, petitioner filed a notice of cross-appeal. (ECF No. 107).

On January 6, 2014, petitioner filed a motion for release of petitioner pending the Court of Appeals' review of this Court's order granting habeas relief. (ECF No. 105). On January 16, 2014, respondents filed an opposition to the motion for release. (ECF No. 106). Petitioner filed a reply on January 22, 2014. (ECF No. 113).

**II. Discussion**

    **A. FRAP 23(c) is Not Applicable**

Petitioner asserts that he is entitled to release pending appellate review of this Court's decision granting habeas relief. In support of this assertion, petitioner relies on Federal Rule of Appellate Procedure (FRAP) 23 and *Hilton v. Braunskill*, 481 U.S. 770 (1987). Specifically, petitioner argues that he is entitled to a presumption of release under FRAP 23(c) and that respondents have the burden of rebutting this presumption. FRAP 23(c) provides as follows:

> While a decision ordering the release of a prisoner is under review, the prisoner must – unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise – be released on personal recognizance, with or without surety.

FRAP 23(c) is applicable where a federal court must determine the custody status of a prisoner who has been granted habeas relief, but no initial custody determination has been made by the district court. However, where an initial custody order has been made, such order "continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order is modified . . . ." FRAP 23(d). In the instant case, this Court has already made an initial custody determination in its order resolving the merits of the

habeas petition. The Court's order granting habeas relief provides as follows:

> IT IS FURTHER ORDERED that the state court Judgment of Conviction is hereby VACATED and petitioner shall be released from custody within thirty (30) days of the later of the conclusion of any proceedings seeking appellate or certiorari review of the Court's judgment, if affirmed, or the expiration of the periods for seeking such appeal or review, unless the State files in this matter a written notice of election to retry petitioner within the thirty-day period to retry petitioner and thereafter commences jury selection in the re-trial within one hundred twenty (120) days following the filing of the notice of election to retry petitioner, subject to request for reasonable modification of the time periods in the judgment by either party pursuant to Rules 59 or 60 of the Federal Rules of Civil Procedure.

(ECF No. 100, at pp. 44-45). As such, the presumption of release under FRAP 23(c) does not come into effect, because this Court has made an initial custody decision in its order granting habeas relief. Additionally, FRAP 23(d) provides:

> An initial order governing the prisoner's custody or release, including any recognizance or surety, continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order is modified or an independent order regarding custody, release, or surety is issued.

It is FRAP 23(d)'s presumption that the initial custody order continues in effect unless the order is modified for "special reasons" by the Court of Appeals or the United States Supreme Court. Therefore, once the initial custody determination is made and Rule 23(d) applies, a motion to modify the custody order should not be considered by the district court, but by the Court of Appeals or the Supreme Court.

The holding of *Hilton v. Braunskill*, 481 U.S. 770 (1987), is not to the contrary. In *Braunskill*, a federal district court granted a habeas petition and ordered that petitioner be released unless the state afforded him a new trial within thirty days. 481 U.S. at 773. The government appealed the grant of habeas relief and moved to stay the district court's order pending the appeal. *Id.* The district court denied the government's motion to stay, finding that the government had failed to show that there was a risk the petitioner would not appear for subsequent proceedings. The Third Circuit Court of Appeals also denied the government's motion to stay the district court's order releasing the petitioner. *Id.* The United States Supreme Court vacated the Third Circuit with instructions to consider the traditional stay factors in evaluating the government's stay request. *Id.*

at 779. The *Braunskill* case addressed circumstances in which the government sought a stay of the initial custody determination. Here, however, the Court is presented with a habeas petitioner's request to modify the Court's initial custody determination. This Court must defer to the Ninth Circuit regarding the question of any change to petitioner's custody status in accordance with FRAP 23(d).

### B. *Braunskill* Factors Weigh Against Any Change to Petitioner's Custody Status

In his reply, petitioner argues that this Court retains jurisdiction over the custody of a habeas petitioner even after a notice of appeal has been taken from the order granting relief. *See Stein v. Wood*, 127 F.3d 1187, 1190 (9th Cir. 1997). To the extent that this Court has jurisdiction to consider petitioner's custody status, the Court considers the *Braunskill* factors. Where a court is "reviewing an initial custody determination pursuant to Rule 23(d)," the court "must accord a presumption of correctness to the initial custody determination made pursuant to Rule 23(c), whether that order directs release or continues custody, but that presumption, too, may be overcome if the traditional stay factors so indicate." *Braunskill*, 481 U.S. at 777. The traditional stay factors are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* at 776. The *Braunskill* Court stressed that this formula "cannot be reduced to a set of rigid rules," and determined that the reviewing court may also consider the possibility of flight, the risk that the prisoner will pose a danger to the public if released, and the State's interest in continuing custody or rehabilitation pending a final determination of the case on appeal. *Id.* at 77. This last factor "will be the strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.* The *Braunskill* Court stressed that with regard to his or her prospects for release, a successful habeas petitioner is in a considerably less favorable position than a pretrial arrestee," since the habeas petitioner "has been adjudged guilty beyond a reasonable doubt by a judge or jury, and this adjudication of guilt has been upheld by the appellate courts of the State." *Id.* at 779.

///

### 1. Likelihood of Success on the Merits

The first factor is whether respondents can show a strong likelihood of success on appeal, or failing this, a substantial case on the merits of their appeal. *See Braunskill*, 481 U.S. at 776, 778. This Court found a due process violation because the trial court failed to give petitioner's requested jury instruction regarding knowledge of wrongfulness. (ECF No. 100, at pp. 28-35). For children between the ages of eight and fourteen, the presumption pursuant to Nevada law is that they do not understand the wrongfulness of their actions. NRS 194.010. At the time the murder was committed, petitioner was fourteen years old. This Court found that the failure to give the knowledge of wrongfulness jury instruction constituted impermissible burden-shifting, as NRS 194.010 creates an additional element that must be proven by the prosecution for each and every criminal offense alleged to have been committed in Nevada by a child between the ages of eight and fourteen. (*Id.*). This Court found that under either the *Brecht* or the *Chapman*/AEDPA test, failure to give this instruction was not harmless error. (*Id.*). In this Court's view, respondents do not have a strong likelihood of success on appeal. However, as discussed *infra*, other factors weigh against any change in petitioner's custody status pending appeal.

### 2. Danger to the Community

The circumstances of petitioner's offense and petitioner's disciplinary history indicate that petitioner poses a danger to the community if released pending appeal. Petitioner was adjudged guilty of first degree murder with use of a deadly weapon by a Nevada jury. (Exhibit 78). Testimony at trial established that petitioner took a shotgun from his grandparents' home in Carson City and fired multiple shots at a 62-year old man, killing him, and then fled to California in the victim's vehicle. (Exhibit 109, at p. 3). Because this Court's decision to grant habeas relief was based not on a finding of petitioner's innocence, but on an instructional error that rendered his convictions unreliable, nothing about his successful petition undermines the significant danger he poses to the community due to his status as a convicted murderer. *See Braunskill*, 481 U.S. at 779.

Respondents have provided petitioner's prison disciplinary record with the response, which indicates that petitioner has engaged in a pattern of disruptive and violent behavior since his arrest in 1995. (ECF No. 106-1). The offenses for which petitioner was found guilty in prison include

fighting, disobedience, rioting, organizing work stoppages, threats, abusive language, and possession of contraband.  Since 2008, petitioner has been found guilty of battery, possession of contraband, self-mutilation, property damage, unauthorized use of equipment or mail, and the possession or sale of intoxicants.  (*Id.*).  Petitioner's disciplinary record indicates repeated violations of institutional regulations.  These circumstances, and his murder conviction, strongly indicate that petitioner poses a danger to the community.  This weighs against any change in petitioner's custody status pending appeal.

### 3. Risk of Flight

Petitioner asserts that he has "strong family support and could live upon release in California with either his mother in Orange County or father in San Diego."  Petitioner is serving consecutive life sentences, and these lengthy sentence support a finding that petitioner poses a flight risk, even assuming he has family support.  This factor weighs against any change in petitioner's custody status pending appeal.

### 4. State's Interest in Continued Custody

The State of Nevada has a significant interest in petitioner's continued confinement. Petitioner is now 33 years old and is serving consecutive life sentences for first degree murder.  (*See* Exhibit 78).  Unless petitioner is paroled, or the State is unsuccessful in both its appeal and in retrying petitioner, he still has many more years left in custody.  The length of petitioner's sentences, the time remaining on those sentences, and the gravity of petitioner's crimes weigh against any change in petitioner's custody status pending appeal.

### 5. Remaining Factors

The remaining traditional factors for consideration are as follows:  (1) whether the applicant will be irreparably injured absent a stay; (2) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (3) where the public interest lies.  *Braunskill*, 481 U.S. at 776.

Petitioner offers these facts for the Court's consideration of the remaining factors:  Petitioner states that he has served more than 18 years in prison and that he has completed his high school diploma, GED, and earned approximately 55 college credits during his incarceration.  Petitioner

cites his family, who live in California and have indicated their ability to house petitioner in either Orange County or San Diego, if petitioner is released.  Petitioner cites the fact that he could assist with the family automotive repair business.  Petitioner states that he does not have a passport.  Petitioner submits letters in support of his release from the following: California attorney Matt Kurilich; his step-father, Chuck Congdon; his sister Summer Bentley; his friend, Matthew Norberg; his former neighbor Jack Norberg; and his mother, Brenda Howell.  (ECF No. 105, Exhibits 1-6).

The Court has considered all arguments and evidence submitted by petitioner, but finds that none are sufficient to overcome the presumption that the initial custody order, found at pages 44-45 of the Court's order of December 5, 2013, is correct.  (ECF No. 100).  Due to the gravity of his crime and the danger he poses to the community, the Court finds that it is in the public's best interest that petitioner remains in the custody pending appeal, pursuant to this Court's initial custody order.  Petitioner's motion for release pending appeal is denied.

**III. Conclusion**

**IT IS THEREFORE ORDERED** that petitioner's motion for release pending resolution on appeal (ECF No. 105) is **DENIED.**

**IT IS FURTHER ORDERED** that petitioner's custody status, as set forth in this Court's initial custody determination, found at ECF No. 100, at pp. 44-45, **REMAINS IN FULL EFFECT**.

**DATED** this 19th day of June, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Court